# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER OLYNYK | Filed via U.S. Mail on April 18, 2025 |
|     Plaintiff, *pro se*, | 3:25-cv-897 |
| v. | |
| PRIMECARE MEDICAL, INC., | |
| ARAMARK, Inc., | FILED |
| The County of MONROE, Pennsylvania | HARRISBURG, PA |
| Joseph MCCOY, Deputy Warden, MCCF | MAY 21 2025 |
| Kristy BROWN, RN, MCCF | PER _____ |
| Defendant STEPHANIE, Head RN, MCCF | DEPUTY CLERK |
| Nurse Heather, MCCF | |
| Defendant HEAD, Food Services, MCCF | |
| Defendant KIA, Food Services, MCCF | |
| Defendant PEOPLES, Food Services, MCCF | |
| Mike DOE, Food Services, MCCF | |
| Jane DOE, Food Services, MCCF | |
| John DOE, Food Services, MCCF | |
| Jane DOE, Medical Department, MCCF | |
| Jane DOE, Medical Department, MCCF | |
| John DOE, Medical Department, MCCF | |
| All sued in their individual and official capacities | |

## JURISDICTION AND VENUE

    This is a civil action authorized by 42 U.S.C. § 1983 to redress the Deprivation, under color of state law, of rights secured by the Constitution of the United States of America and the Pennsylvania Constitution. The Court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a) (3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. § 2283 and § 2284 and Rule 65 of the Federal Rules of Civil Procedure. At all times during this complaint, Plaintiff was a legal citizen of the United States of America.

    The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. § 1391 (b) (2) because it is where the events giving rise to this claim occurred.

**A trial by jury is demanded on all issues in this Complaint.**

## PARTIES

I. Plaintiff, PETER OLYNYK, is a prisoner currently incarcerated at SCI-Chester, a state correctional facility in Delaware County, Pennsylvania (DOC No. QQ2030). The events giving rise to this claim, however, occurred at Monroe County Correctional Facility. At the time of the events in this complaint, the Plaintiff was a unconvicted pre-trial detainee,

### MEDICAL DEFENDANTS

II. Defendant, PRIMECARE MEDICAL, is contracted with the Monroe County Correctional Facility (MCCF hereafter) to provide medical services to the County of Monroe for its detainees. As such, PRIMECARE MEDICAL is a state actor under § 1983.

III. Defendant, Kristy BROWN, is a Registered Nurse assigned to MCCF. BROWN's contract is with PRIMECARE directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

IV. Defendant, Stephanie DOE, is the head Registered Nurse assigned to MCCF. DOE's last name is unknown, as the Defendant knew her as "Ms. Stephanie". DOE's contract is with PRIMECARE directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

V. Defendant, Heather DOE, is a medical dispensary clerk assigned to MCCF. DOE's last name is unknown, as the Defendant knew her as "Ms. Heather". DOE's contract is with PRIMECARE directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

VI. Several other Defendants were unable to be identified and were named only as Doe Defendants. These Defendants will be identified through Discovery.

### ARAMARK DEFENDANTS

VII. Defendant, ARAMARK, Inc. is contracted with the MCCF to provide culinary services to the County of Monroe for its detainees. As such, ARAMARK is a state actor under § 1983.

VIII. Defendant, "Mike" DOE, is an employee contracted with ARAMARK to provide food services for inmates assigned to MCCF. DOE's last name is unknown, as the Defendant knew him as "Mr. Mike". DOE's contract is likely with ARAMARK directly, however, he is a state actor under § 1983. He is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

IX. Defendant, Kia DOE, an employee contracted with ARAMARK to provide food services for inmates assigned to MCCF. DOE's last name is unknown, as the Defendant knew her as "Ms. Kia". DOE's

X.     contract is likely with ARAMARK directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

X. Defendant, Ms. HEAD, an employee contracted with ARAMARK to provide food services for inmates assigned to MCCF. HEAD's first name is unknown, as the Defendant knew her as "Ms. Head". DOE's contract is likely with ARAMARK directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

XI. Defendant, Ms. PEOPLES, an employee contracted with ARAMARK to provide food services for inmates assigned to MCCF. PEOPLES's first name is unknown, as the Defendant knew her as "Ms. Peoples". DOE's contract is likely with ARAMARK directly, however, she is a state actor under § 1983. She is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

XII. Several other Defendants were unable to be identified and were named only as Doe Defendants. These Defendants will be identified through Discovery.

## MONROE COUNTY DEFENDANTS

XIII. Defendant, Joseph MCCOY, is the Deputy Warden of MCCF. At all times mentioned in this complaint, MCCOY was responsible for the overall operation of the facility, including authority and oversight of all employees, contractors, and individuals in the facility. MCCOY was personally involved in the events giving rise to this Action and acquiesced in the actions of his subordinates. He is assigned to the Monroe County Correctional Facility, located at 4250 Manor Drive, East Stroudsburg, PA 08360.

## ABOUT THE JOHN AND JANE DOE DEFENDANTS

XIV. It should be noted that because MCCF created an informal custom of not allowing staff members to properly identify themselves, many of these Defendants are identified only by a first name, a nickname, or sometimes a last name, but often not a first and last name together, making service difficult. Plaintiff intends to request a full list of staff members in the medical department and the culinary department, complete with color photos of each individual so that the Plaintiff can properly identify these Defendants. To the degree that personal service is not effectuated prior to the two-year statute of limitations, the Plaintiff will make every attempt to identify and make service upon the appropriate Defendants as quickly as possible. Defendants identified after this two-year statute of limitations will relate back to the events in this complaint, which was timely submitted, and are currently either partially identified or identified as "John Doe" or "Jane Doe".

## FACTS

1. Plaintiff, PETER OLYNYK, was incarcerated at MCCF on April 24, 2023, the date of the first incident in this complaint.

2. At all times mentioned in this Complaint, Plaintiff was a legal U.S. Citizen.
3. On April 24, 2023, Plaintiff was employed and actively working for MCCF as an inmate kitchen worker.
4. Plaintiff was working the second shift (11am-7pm).
5. At around 1:00pm, Plaintiff was ordered to fill a ten-gallon Cambro brand water container with boiling water (approximately 210-220 degrees).
6. He was then ordered to push a cart holding the aforementioned water container to the "sally port"[1], or entrance, of the prison's female housing unit.
7. While en route to the female housing unit, near the entryway to the "sally port", the transport cart holding the water container tipped over.
8. The provided transport cart was not equipped to carry the water container, both due to its size and weight.
9. The ten gallon container weighed at least 85 pounds, possibly closer to 100 pounds.
10. When the water container tipped over, boiling water was spilled out.
11. The water container was equipped with a lid that was designed to be clamped down with eight clamps.
12. However, only two clamps were used on the water container.
13. Plaintiff had previously attempted to warn Defendants in Food Service, including Defendant MIKE, Defendant KIA, Defendant HEAD, and Defendant PEOPLES about the safety risk posed by these missing clamps.
14. Further, Plaintiff also previously informed these Defendants that the cart frequently used to transport the water was insufficient and unsafe.
15. Plaintiff took precautions to push the cart slowly.
16. As the cart tipped over, Plaintiff attempted to jump backward to avoid the boiling water, which exposed Plaintiff's leg and foot to the spilling liquid.
17. At this point Plaintiff began screaming in excruciating pain and tried to remove his shoe.
18. Plaintiff then took his sock off, removing several layers of skin in the process, albeit inadvertently.
19. Counselor Kate[2] (Last name unknown) was coming out of the female housing unit and told PLAINTIFF, "Don't worry about the water on the floor, go to medical immediately".
20. Plaintiff was forced to walk to medical on his own, without assistance, despite his severe burns.
21. At medical, Defendant BROWN applied topical burn ointment, an over the counter medication, and added gauze to his foot.

---

[1] This term generally means "entrance" or "holding area" in this context.
[2] Not a Defendant in this Action

22. Plaintiff was then directed to walk, without crutches or a wheelchair, back to his housing unit, where he lived on the top tier.
23. Plaintiff's pain was excruciating, and upon arriving to his cell, bubbles and blisters began to rapidly generate across the surface of his upper foot.
24. An hour later, Plaintiff walked to the officer's desk and requested to go back to medical due to the burn getting progressively worse.
25. Medical staff applied more cream and gave Olynyk a bag of ice and a single crutch.
26. Upon returning to the unit, Plaintiff was transferred to a bottom tier cell.
27. From then on, Plaintiff was placed on a wound care callout, where he was called down every day to the medical department at their convenience.
28. "Care" was applied by Defendants Stephanie, Brown, Heather, and other DOE Defendants employed by Primecare.
29. Over the course of several days of complaints, Plaintiff was finally hospitalized at St. Luke's Hospital on Route 611 in Monroe, on April 27, 2023, three days later.
30. In the emergency room, a doctor took photographs but would not touch the wound and instead sent photos to a burn center at Cedar Crest in Allentown.
31. Plaintiff was administered medication (a low dosage opiate) and sent back to MCCF.
32. Every day, Plaintiff's "treatment" consisted of simply ice, OTC burn ointment, and ace bandages, and nothing more.
33. Two weeks after this trip to St. Luke's Hospital, Plaintiff was sent to the burn center at Cedar Crest in Allentown, where his wounds were treated properly.
34. Plaintiff was in extreme pain for nearly three months because of these injuries.
35. Plaintiff's treatment was significantly delayed, deferred, and in effect, denied, without legitimate cause.
36. The Defendants' collective actions did not further any legitimate penological goals and were negligent, careless, reckless, wanton, and deliberately indifferent.

## CAUSES OF ACTION

37. The named Primecare Defendants engaged in denial, delay, and deferral of medical treatment that was deliberately indifferent to the Plaintiff's Fourteenth Amendment Due Process rights as a pre-trial detainee.
38. Further, the named Primecare Defendants were careless and reckless, and at a minimum, incredibly negligent. Plaintiff's severe burns were treated with ice and over the counter products when intensive treatment was necessary.

Case 3:25-cv-00897-KM-EW    Document 1    Filed 05/21/25    Page 6 of 11

OLYNYK v. PRIMECARE MEDICAL, et al., Filed April 18, 2025                                                                                  6

39. The named Aramark Defendants were deliberately indifferent to the safety risks imposed upon the Plaintiff and similarly situated pre-trial detainees working in its kitchen. These Defendants were aware of the damaged and unsafe kitchen equipment, and refused to take appropriate action to protect the detainees from serious injury.
40. Plaintiff and other detainees frequently informed the Aramark Defendants of unsafe, unsanitary, and dangerous conditions, and the Defendants routinely ignored these reports and refused to act upon them.
41. Plaintiff possesses affidavits from other detainees and plans to obtain more of these affidavits from former and current MCCF detainees to support these claims.

## *MONELL* CLAIM(S)

42. Defendant ARAMARK is properly named as a state actor in its official capacity because Plaintiff frequently attempted to alert staff to the dangers of the damaged and ineffective equipment, namely, the cart and the water container.
43. ARAMARK maintained a custom of failing to maintain adequate equipment for MCCF, despite the pressing risk of injury to others.
44. ARAMARK's negligence and neglect is so great that it shocks the conscience. ARAMARK frequently directs its employees to undertake cost-cutting measures that put inmates and staff at risk for injury.
45. ARAMARK has had several other incidents around the same period of time that displays a pattern of recklessness and carelessness.
46. ARAMARK has known that the equipment in this case was damaged, and kitchen staff alleged that they tried to reorder new clamps and a better cart, but were told that ARAMARK denied the acquisition order and told them to "make do with what they had". Whether or not this is true can only be determined through discovery.
47. Defendant PRIMECARE MEDICAL is properly named as a state actor in its official capacity because PRIMECARE maintains both a policy and an informal custom of failing to provide adequate treatment for injuries, providing bare-minimum care to save money.
48. Further, PRIMECARE has a reputation of using OTC products and low-strength OTC pain medications to treat conditions and injuries that warrant both stronger medications, prescription strength treatments, and prescription strength pain medication.
49. PRIMECARE is often encouraged by MCCF to avoid prescribing prescription strength pain medications for alleged "security reasons", even when it is medically necessary.
50. The County of MONROE is named as a *Monell* claim because MCCF administration routinely encouraged medical staff to avoid taking inmates to outside hospitals, avoid prescribing opiate

medications for pain, even when medically necessary, and avoid placing inmates in hospitals when they could be "treated" at the infirmary.

## REQUESTED RELIEF

WHEREFORE, PETER OLYNYK, Plaintiff, requests that the Court grant the following relief:

A. Adjudge and declare that the acts and omissions of Defendants as described herein are in violation of the Plaintiff's rights under the Fourteenth Amendment, relevant Pennsylvania Constitutional law; and

B. Grant nominal damages for all named violations of the Fourteenth Amendment to the United States Constitution; and

C. Grant adequate compensatory damages for all named violations of the Fourteenth Amendment to the United States Constitution; and

D. Grant significant punitive damages for all named violations of the Fourteenth Amendment to the United States Constitution; and

E. Grant Plaintiff's filing fees, appeal fees, legal expenses, and other related expenses to this suit; and

F. Grant attorneys' fees and costs (once counsel is appointed); and

G. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court and there is reasonable assurance that Defendants will continue to comply in the future, absent continuing jurisdiction; and

H. Award such other relief as the Court or a jury deems just and proper.

## VERIFICATION OF STATEMENT

I, PETER OLYNYK, hereby certify under penalty of perjury that the aforementioned statements are true, correct, and accurate to the best of information, knowledge, and belief.

Respectfully Submitted For Your Consideration,

*Peter Olynyk*

PETER OLYNYK
QQ2030
SCI-Chester
500 East 4th Street
Chester, PA 19013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER OLYNYK | Filed via U.S. Mail on April 18, 2025 |
|     Plaintiff, *pro se*, | |
| v. | |
| PRIMECARE MEDICAL, INC., et al., | |
|     Defendants, | |

## CERTIFICATE OF SERVICE

I, PETER OLYNYK, hereby certify that on Friday, April 18, 2025, I served the foregoing **INITIAL CIVIL COMPLAINT** upon the persons indicated below via United States Mail:

United States District Court for the Middle District of Pennsylvania

Sylvia H. Rambo Courthouse

1501 North 6th Street, Suite 101

Harrisburg, Pennsylvania 17102

Respectfully Submitted,

*/s/ Peter Olynyk*

PETER OLYNYK

QQ2030

SCI-Chester

500 East 4th Street

Chester, PA 19013

## CERTIFICATE REGARDING WORD COUNT

I, PETER OLYNYK, *pro se* litigant, hereby certify that the body of the foregoing Complaint, including footnotes, is approximately 2416 words.

Respectfully Submitted For Your Consideration,

*Peter Olynyk*

PETER OLYNYK
QQ2030
SCI-Chester
500 East 4th Street
Chester, PA 19013

